## Thomas R. Goodlatte et al., trading as T. R. Goodlatte & Sons, Appellees, v. Acme Sales Corporation, Appellant.

### Gen. No. 27,787.

1. SALES—*burden of proof that goods delivered not equal to sample.* In an action for the purchase price of goods sold by sample, the burden of proving that the goods received by the buyer were inferior to the sample is upon the buyer where it is alleged in the statement of claim that the goods were sold and delivered to the buyer and the buyer's affidavit of merits sets up a sale by sample and that when the goods were received they were rejected because they were not in accordance with the sample submitted.

2. SALES—*when rejection of goods bought by sample for inferiority is unreasonably delayed as a matter of law.* The buyer of goods by sample is shown to have delayed rejecting them too long as a matter of law, within the meaning of Cahill's Ill. St. ch. 121a, sec. 47 *et seq.*, relative to sales by sample providing that the buyer shall have a reasonable time within which to inspect the goods and reject them if they are not equal to the sample, where the evidence shows that the goods were shipped to the buyer during the latter part of April and were received by the buyer shortly thereafter, that payment was to be made within 30 days, that the buyer gave no intimation to the seller that they were inferior until June 29, and did not reject them until September 12, although it had notice shortly after their receipt that its customers were returning the goods as inferior.

3. SALES—*when buyer's right of set-off for failure to deliver goods equal to sample lost by delay in rejecting goods.* A buyer of goods by sample which unreasonably delays rejecting such goods under the terms of Cahill's Ill. St. ch. 121a, sec. 49, requiring notice of rejection to be given to the seller within a reasonable time in order to charge the seller with breach of warranty, cannot recoup or set-off its damages from the seller's failure to deliver goods equal to the sample, in an action for the purchase price, the amount of the goods shipped and the purchase price being admitted by the buyer.

Appeal by defendant from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed June 20, 1923.

MYER LINKER, for appellant.

HOYNE & O'CONNOR, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiffs brought suit against defendant to recover $797.71, claimed to be the purchase price due them from the defendant for forty barrels and one package of "oil skins." The defendant filed an affidavit of merits denying that it owed the plaintiffs anything, and also filed a set-off claiming damages in the sum of $693.80 on account of plaintiffs' failure to deliver the kind of oil skins purchased. There was a trial before a judge and a jury and at the close of the evidence the court instructed the jury to find the issues in favor of plaintiffs for the amount of their claim and against the defendant on its set-off, which was accordingly done and judgment entered on the verdict. This appeal followed.

The record discloses that plaintiffs were engaged in the oil business with offices in New York City and that defendant conducted its business in Chicago dealing in oils; that the business between the parties was carried on by correspondence; that plaintiffs in New York sent a sample of their oil skins to defendant in Chicago, and, after examining it, the defendant purchased the oil skins in question. It was admitted on the trial that the plaintiffs delivered the quantity for the purchase price of which this suit is brought. Some of the goods were shipped in accordance with defendant's instructions to New Jersey and some to Detroit. All were shipped by plaintiffs to the defendant during the last days of April, 1918, and were received shortly thereafter.

Defendant's position was that the oil skins received were not in accordance with the sample submitted; that when this was discovered it rejected the goods, and in these circumstances was not obligated to pay

for them. Of course, if the facts were as defendant contends, it would legally follow that there could be no judgment entered against it. In the instant case, the sale being by sample, there was an implied warranty that the bulk would correspond in quality to the sample. Section 16, ch. 121a, Cahill's Ill. St. And this being the law, defendant contends that before the plaintiffs could recover the burden was upon them to prove that the goods delivered were in accordance with the sample. But that is not the theory of the case. It is alleged in plaintiffs' statement of claim that the goods were sold and delivered to the defendant. Defendant's affidavit of merits sets up that the purchase was made by sample and that when the goods were received by it from the plaintiffs they were rejected because they were not in accordance with the sample submitted. In this state of the pleadings it is obvious that the burden of proving the goods were not up to the sample was upon the defendant.

It appears from the evidence that the goods in question were delivered by plaintiffs to the defendant the latter part of April, 1918; that the terms of the sale were "two per cent ten days, net 30 days." This would make the bills payable about June 1, 1918. After the bills became due, plaintiffs demanded payment, and the first complaint made to them that the goods were not in accordance with the sample was in a letter written by it to plaintiffs on June 29, nearly 30 days after the purchase price was due and payable. In that letter the defendant states that the reason they had not paid plaintiffs was "because we had a good deal of trouble with your materials, and we are not quite sure whether we shall not be compelled to return same altogether. The different samples which you submitted were in the form of a rather heavy liquid showing at any rate not more than fifty per cent solid matter, while the delivered material was of solid consistency. Therefore, all our customers have returned the material and caused us near to $200 expenses,

"However, we do not like to make complaint and, therefore, we have ordered one sample barrel from our eastern warehouse to Chicago where we shall have it analyzed by our chemist and try to find some way to utilize it in order to be able to work up the lot which we now have on hand, and also to enable us to do business with you in the future. We shall inform you of the outcome of these tests as soon as possible."

On July 3, plaintiffs replied to this regretting to learn that the defendant had trouble with the material, stating: "It is probably due to the fact that the samples were taken from or near the top of the barrels and more of the solid matter was at the bottom. It is very difficult to get satisfactory samples of such material.

"This office, of course, did not know of your trouble and so far as we know, our mill did not.

"We hope you will be able to use the material and await your further favor with interest."

On September 12, 1918, defendant wrote plaintiffs as follows: "We have nearly completed the examination of the barrel of oil skins which we ordered to Chicago, but regret to say the goods do not come up to the sample originally submitted. Under these circumstances we hold the entire shipment subject to your instructions."

Thereafter the plaintiffs again sent a statement and demanded payment.

The defendant contends that from the evidence as above stated, it clearly appears that it did not accept the goods, but on the contrary the evidence is undisputed that it rejected them and thereby rescinded the contract. It further contends that at most the question whether the rescission was in apt time was a question of fact for the jury, and, therefore, the court erred in directing a verdict.

The goods having been sold by sample, there was an implied warranty that the bulk should correspond to the sample. The defendant had the right to refuse to

accept the goods and rescind the contract if it did so within a reasonable time. Section 47, ch. 121a, Cahill's Ill. St. That section provides that where goods are delivered to the buyer which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they conform to the contract. And section 48 of the same chapter provides that "the buyer is deemed to have accepted the goods  *  *  *  when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them." Section 49 of the same chapter provides that "in the absence of an express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor." In providing for the remedies of a buyer for breach of warranty, section 69 of the same chapter provides: "Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind."

Where goods have been received by the buyer and retained by him without objection for a substantial period of time, it is generally a question of fact for the jury as to whether the time that has elapsed before the complaint is made is a reasonable time, but where all reasonable minds would reach the conclusion that the goods were retained an unreasonable length of time before any complaint was made, it then becomes a question of law for the court. *Eureka Waist Co. v. Herrick Bros. & Co.*, 226 Ill. App. 316. In the instant

case the goods having been shipped the latter part of April, 1918, and the defendant being required to pay for them within 30 days, and not having given any intimation of any inferiority in them until June 29, and not having rejected them until September 12, following, we think that all reasonable minds would reach the conclusion that the objection came too late. There is no reason why the goods could not have been examined shortly after they were received by the defendant. This not having been done, it was in no position to reject them on September 12. Nor was it entitled to recoup any damages because it failed to comply with section 49, *supra*. *Canada Maple Exchange, Ltd. v. Scudder Syrup Co.,* 223 Ill. App. 165. There being no dispute as to the quantity of goods shipped nor as to the contract price, it follows that defendant could not recover on its set-off. There was nothing for the trial court to do but direct a verdict as was done.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

THOMSON, P. J., and TAYLOR, J., concur.