CHICAGO—FIRST DISTRICT—OCTOBER, 1927. 531

Genuine Panama Hat Works v. Paragon Hat Co., 245 Ill. App. 531.

## Genuine Panama Hat Works, Inc., Appellee, v. Paragon Hat Company, Appellant.

## Gen. No. 31,543.

1. FORMER ADJUDICATION—*essentials to establishing.* The burden of proving a plea of *res adjudicata* because of a former judgment is upon the defendant making it; the proof must be clear and convincing, and the very matter in controversy must be shown to have been settled in the prior controversy.

2. FORMER ADJUDICATION—*effect of acceptance of goods after judgment.* A judgment that a defendant was not liable for a shipment because of his refusal of the goods on the ground they did not comply with specifications does not operate as an adjudication that he continued not to be liable therefor after he changed the relations of the parties after that judgment was rendered by accepting the goods.

3. SALES—*when acceptance constitutes.* A sale is implied when a party, with knowledge that goods are offered for sale at prices named in invoices accepts them and exercises acts of ownership over them.

4. SALES—*when rejection does not negative.* A buyer may accept goods and become liable for their price as originally quoted him although prior to such acceptance he had rejected them.

5. SALES—*necessity of notice of breach of warranty.* Under Cahill's St. ch. 121a, ¶ 52, providing that an acceptance of goods without notice in reasonable time of a breach of promise or warranty makes the buyer liable, a buyer who first rejects goods and then accepts them, without giving notice they are not according to specifications, cannot afterwards show such alleged breach as an offset to their price.

6. MUNICIPAL COURTS—*necessity of pleading breach of warranty.* Under rules of the municipal court of Chicago that all grounds of defense must be specifically pleaded and that allegations not denied specifically or by necessary implication are deemed admitted, a buyer who wishes to avail himself of the defense that goods bought were not up to warranty must so plead, in order to use that defense upon trial.

7. ASSUMPSIT—*as remedy to recover agreed price of accepted goods on delayed acceptance.* Assumpsit and not conversion is the proper remedy for a seller to recover the price of goods, which were first rejected by the buyer but, after the seller had refused to receive them back and continued to insist on the buyer's taking them, were finally accepted by the buyer who then refused to pay for them.

8. CONVERSION—*what necessary to constitute.* To constitute a conversion of chattels there must be an unauthorized assumption of the right to the possession or ownership thereof.

532      Appellate Courts of Illinois.

Genuine Panama Hat Works v. Paragon Hat Co., 245 Ill. App. 531.

Appeal by defendant from the Municipal Court of Chicago; the
Hon. C. F. McKinley, Judge, presiding. Heard in the second division
of this court for the first district at the October term, 1926. Affirmed.
Opinion filed October 4, 1927. Rehearing denied October 17, 1927.

Lewis, Adler, Lederer & Kahn, for appellant.

Moses, Kennedy, Stein & Bachrach, for appellee;
Hirsch E. Soble, of counsel.

Mr. Justice Gridley delivered the opinion of the
court.

In an action in assumpsit, commenced June 9, 1924,
for the recovery of the invoice prices, aggregating the
sum of $2,972.25, of 159 dozen straw hats, sold and
originally delivered in five separate shipments to de-
fendant in Chicago during June, 1920, the court in-
structed the jury to find the issues against defendant
and assess plaintiff's damages at said sum. Such
verdict being returned on February 26, 1926, the court
entered judgment thereon and this appeal followed.

In plaintiff's statement of claim, after stating the
sale and delivery at said prices, it is alleged that on
June 21, 1920, defendant, after receiving the goods,
"rejected and refused to accept the same," because
it claimed that they were not as warranted, "and re-
turned them to the American Railway Express Com-
pany for shipment back to plaintiff in New York
City"; that "plaintiff refused to accept the return of
the goods"; that thereafter they were held in storage
by the Express Company until about December, 1923,
when defendant ordered them "reconsigned back to
it" by the Express Company, and "accepted" them;
and that defendant, although often requested, has re-
fused to pay for the goods or any part thereof, to
plaintiff's damage, etc.

In the defendant's affidavit of merits the only de-
fense stated is *res adjudicata*. After denying that
defendant is indebted to plaintiff it is alleged that on

November 17, 1923, in the case of *Genuine Panama Hat Works, Inc. v. Paragon Hat Company,* lately pending in said municipal court as case No. 853,241, judgment was entered after verdict against defendant; that the judgment thereafter was paid by defendant; that the parties and the subject matter in the two suits are the same; and that, therefore, said suit and judgment are *res adjudicata* of plaintiff's claim in the present action.

Prior to the trial plaintiff, by leave of court, filed certain interrogatories to be answered by defendant. In its answers defendant admitted that during June, 1920, it received from plaintiff, through the Express Company, the several shipments as set forth in plaintiff's statement of claim, and with each shipment an invoice showing the quantity, style and prices of the goods, but stated that shortly after the receipt of the shipments it rejected the goods and returned them to the Express Company for delivery back to plaintiff in New York City. Defendant further admitted that, on or about November 22, 1923, it "ordered said Express Company to return said merchandise to it (defendant) which was accordingly done on or about November 26, 1923."

Upon the trial plaintiff's attorney read to the jury the interrogatories and answers, except certain portions of the answer to interrogatories 11 and 12, which on plaintiff's motion were stricken, and thereupon plaintiff rested. Defendant's motion for a directed verdict was overruled, and, to sustain its defense of *res adjudicata,* it introduced the pleadings, verdict, judgment and satisfaction of judgment in the former suit (case No. 853,241), and also certain portions of the proceedings therein. Defendant also made certain offers to prove the condition and market value of the goods in question, both at the time they were originally delivered to it in June, 1920, and at the time they were again delivered to it by the Express Company in

November, 1923, and also to prove the amounts which defendant had paid to the Express Company for express and storage charges and also the amounts paid for insurance on the goods while they were in storage with the Express Company. Plaintiff's objections to the offered evidence, on the ground that it was incompetent and not material to the issues, were sustained by the court. Thereupon plaintiff, in rebuttal, introduced in evidence two forms of verdict (which the jury in the former suit had returned into court *unsigned*) and also certain testimony of the court reporter who had reported defendant's counsel's closing argument to the jury in that suit. At the close of all the evidence defendant's renewed motion for a directed verdict was overruled, but the court sustained plaintiff's motion for a directed verdict in its favor for said sum of $2,972.25.

In October, 1920, plaintiff sued defendant to recover the sum of $6,154.50, and interest, for eighteen separate shipments of straw hats, received by defendant during the months of May and June, 1920. Ten of these shipments were in May and eight in June. Five of the June shipments, aggregating at invoice prices $2,972.25, are those now in question. From defendant's affidavit of merits, and from interrogatories and answers filed in the former suit, it appears that defendant rejected said five June shipments, on the claimed ground that the goods were not in accord with samples or description, and returned them to the Express Company to be returned to plaintiff at New York City. It further appears that defendant accepted thirteen of the shipments, aggregating at invoice prices $3,182.25, and that all shipments (including the five rejected) were accompanied with invoices showing the quantities, styles and prices. In the former suit defendant also filed a claim of set-off of $8,475.79. This set-off was made up of the following items: (a) $5,000 for alleged damages because of plaintiff's fail-

ure to deliver other goods at other times; (b) $2,972.25, the invoice prices of the goods in the five rejected shipments; (c) $48.49, paid for express charges on the rejected shipments; and (d) $455.05, for damages because of certain claimed defects in certain goods contained in the thirteen accepted shipments. Plaintiff, in its affidavit of merits to defendant's claim of set-off, denied that defendant was entitled to any damages or deductions, that the goods in the five rejected shipments were not according to sample or description, or that defendant had any right to reject them. During all of the time of the pendency of the former suit, and until a few days after November 17, 1923 (when judgment following the jury's verdict was entered therein against defendant for $3,659.59), the rejected goods remained in the custody of the Express Company,—plaintiff having refused to accept their return. Upon the trial of the former suit defendant, in support of its set-off, adduced some evidence of damages but only to the extent of $1,600 or $1,800. This evidence was disputed by plaintiff's contrary evidence. In his closing argument to the jury defendant's counsel stated in substance that defendant had produced evidence of damage under its set-off to the extent of from $1,600 to $1,800, and, arguing that defendant was justified in rejecting the five shipments, urged the jury to return a verdict in plaintiff's favor for the invoice prices of the thirteen shipments which defendant had accepted, less defendant's damages in said sum from $1,600 to $1,800, but not to award plaintiff anything for said five rejected shipments. The court submitted to the jury three forms of verdict: One finding the issues against defendant and assessing plaintiff's damages at ............ dollars; another finding the issues against plaintiff; and a third finding the issues against plaintiff on defendant's claim of set-off and assessing defendant's damages at ............ dollars. In its oral charge to the jury

the court instructed them that, if they believed from
the evidence that plaintiff was entitled to recover, they
might allow it interest at the rate of 5 per cent per
annum on such sum, if any, as they believed it was
entitled to recover from defendant, etc., and also in-
structed them that if they found the issues for defend-
ant on its claim of set-off, they should sign said third
form of verdict. The jury used *only* said first form,
viz, finding the issues against defendant and assessing
plaintiff's damages at $3,659.59. The other two forms
of verdict were returned into court blank and unsigned.
The invoice prices of the thirteen shipments which
defendant had accepted, and which had been delivered
to it prior to June 1, 1920, amounted to $3,182.25, and it
is evident that the jury reached the amount of its
verdict by allowing this sum, *plus* 3 years interest at
5 per cent thereon, or $477.24. On November 22, 1923
(five days after the judgment on the verdict had been
reached) defendant ordered the Express Company to
ship to it at Chicago all of said previously rejected
goods, and on or about November 26, 1923, the Express
Company did so, and defendant accepted them.

The main contention of defendant's counsel is that
the court erred in holding that defendant had not
sustained its plea of *res adjudicata*. Notwithstanding
that the proceedings and verdict in the former suit
sufficiently disclose that plaintiff did not recover any-
thing for said five shipments, aggregating at invoice
prices $2,972.25, and that the jury in that suit did not
allow defendant anything on its said claim of set-off,
and notwithstanding that defendant, *after* judgment
rendered in that suit, *accepted* the goods of said five
shipments which it previously had rejected, counsel
argue that its plea of *res adjudicata* is good and that
it is not indebted to plaintiff in any sum. We cannot
agree with the contention or argument. To sanction
either would allow defendant to obtain and keep goods
without paying anything therefor. It is the law that

the burden of proof is upon a defendant to sustain his plea of *res adjudicata,* and that any uncertainty as to what was determined in the former suit should be resolved against him. (*Chicago Theological Seminary v. People ex rel. Raymond,* 189 Ill. 439, 444; *People ex rel. Mercer v. Wyanet Electric Light Co.,* 306 Ill. 377, 383; *Sawyer v. Nelson,* 160 Ill. 629, 631; *Pillsbury v. Early,* 324 Ill. 562, 565; *Washington, A. & G. Steam Packet Co. v. Sickles,* 5 Wall. [U. S.] 580, 592.) In the *Theological Seminary* case, *supra,* it is said:

"The burden of proof is always upon the defendant, who pleads *res adjudicata* because of a former judgment, to set up that judgment, and show what was determined by it, and what is common to the subsequent action. The proof must be clear, certain and convincing. * * * If there be an uncertainty as to what was the precise question raised and determined in the former suit, as, for example, if it appears that several distinct matters may have been litigated, upon one or more of which the judgment may have been passed, without indicating which of them was litigated, the whole subject matter of the action will be at large, and open to any new contention."

In the *Sickles* case, *supra,* it is said:

"As we understand the rule in respect to the conclusiveness of the verdict and judgment in a former trial between the same parties, when the judgment is used in pleading as a technical estoppel, or is relied on by way of evidence as conclusive, *per se,* it must appear, by the record of the prior suit, that the particular controversy sought to be concluded was necessarily tried and determined—that is, if the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter, it will be considered as having settled that matter as to all future actions between the parties; and further, in cases where the record itself does not show that the matter was necessarily and directly

found by the jury, evidence *aliunde*, consistent with the record, may be received to prove the fact; but, even where it appears from the extrinsic evidence that the matter was properly within the issue controverted in the former suit, if it be not shown that the verdict and judgment necessarily involved its consideration and determination, it will not be concluded."

In the present case, in our opinion, the defendant did not sustain the burden of its plea of *res adjudicata* as regards said five shipments, particularly so as it appears from the evidence that, a few days after the judgment in the former suit had been entered, defendant ordered the Express Company to ship back to it the goods, and, upon the Express Company's complying with the order, defendant accepted them. New or additional facts, conditions and rights, therefore, arose concerning the goods and the relations of the parties after the rendition of the judgment in the former suit. In 34 Corpus Juris, p. 808, sec. 1228, it is said: "The estoppel of a judgment extends only to the facts and conditions as they were at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; and when new facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the parties respectively, the issues are no longer the same, and hence the former judgment cannot be pleaded in bar in the subsequent action." In *Witherstine v. Snyder*, 231 Ill. App. 240, 244, it is said: "A judgment or decree will not operate as an adjudication of rights not in existence at the time of its rendition. (*Deke v. Huenkemeier*, 289 Ill. 148, 154.)"

Counsel for defendant further contend that the court erred in sustaining plaintiff's objections to defendant's offers to prove, in mitigation of damages, the condition and market value of the goods at the time defendant first received them in June, 1920, and also at the time defendant finally received them from the

Express Company in November, 1923. We do not think so. When defendant originally rejected the goods in question and returned them to the carrier to be shipped back to New York City, plaintiff refused to accept their return, then claiming and always thereafter maintaining that defendant was not justified in rejecting them. In October, 1920, plaintiff sued defendant to recover the invoice prices of the goods in all eighteen shipments (including the goods in question), for which defendant had refused to pay anything. The jury awarded as damages to plaintiff the aggregate invoice prices of the goods in the thirteen shipments (which defendant had accepted) plus accrued interest, and on November 17, 1923, judgment was entered on the verdict against defendant. Although that verdict and judgment probably amounted to an adjudication, under the then existing facts and conditions, that defendant was right in rejecting the goods in question and that it was not *then* liable to plaintiff for the purchase prices, yet, shortly after the entry of said judgment, defendant *accepted* the goods from the carrier and the relationship of the parties as to the goods was changed. Theretofore, because defendant originally had rejected the goods and plaintiff had refused to take them back, the situation amounted to a continuing offer by plaintiff to sell the goods at invoice prices, and, when defendant finally accepted them, we think it became obligated to pay plaintiff therefor at said prices. It is law that, when goods are offered for sale by one party at prices named in invoices, and the other party, knowing those prices, receives and accepts the goods and exercises acts of ownership over them, a sale to said other party at the named prices is implied. (35 Cyc., p. 59; *Neidig v. Cole,* 13 Neb. 39, 42; *Estey Organ Co. v. Lehman,* 132 Wis. 144, 148; *Farmers' Handy Wagon Co. v. Newcomb,* 192 Mich. 634, 639.) And, where a buyer of goods at prices named in the invoices at first rejects

them, he may afterwards recede from his position and accept them, and, if he does so, he becomes liable for the goods at said prices. (*Loveland v. Havlena,* 50 N. D. 157, 162; *Farmers' Handy Wagon Co. v. Newcomb, supra.*)

In the *Newcomb* case (192 Mich. 639) it is said:

"Counsel for appellant argue that, even if defendant did have the silo shipped from the warehouse at Grand Rapids to Williamsburg, that was a matter between the defendant and the railroad company from which plaintiff can claim no advantage. This is not a tenable position. Even if defendant had retracted and canceled his order, and even if plaintiff had received notice of such cancellation, the shipment of the silo thereafter to defendant was an offer on the part of the plaintiff to sell it to him in accordance with the terms of the order. And, if defendant thereafter exercised acts of ownership over it, and had it shipped to Williamsburg for his benefit, that was an acceptance which made him liable for the purchase price."

In view of these authorities, and it appearing in the present case that defendant finally accepted the goods, knowing their condition and the invoice prices, we are of the opinion that it was immaterial what their condition and actual value was in June, 1920, and November, 1923, and that the court properly refused defendant's offers of proof. Even if the goods, upon their acceptance by defendant in November, 1923, were found not to be according to sample or description or not as warranted, defendant is not entitled to any diminution from the invoice prices, for it does not appear that defendant, after finally accepting the goods, gave any notice to plaintiff of any breach on plaintiff's part of any promise or warranty. It is provided in section 49 of the Uniform Sales Act that: "If, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to

know of such breach, the seller shall not be liable therefor.'' (Cahill's St. 1925, p. 2136, ¶ 52; and see *Canada Maple Exchange, Ltd. v. Scudder Syrup Co.,* 223 Ill. App. 165, 168; *Goodlatte v. Acme Sales Corporation,* 229 Ill. App. 610, 615.) And there is another reason why the court's rulings refusing said offers were correct. The only defense pleaded in defendant's affidavit of merits was that of *res adjudicata.* In the rules of the municipal court, which are contained in the present record, it is provided in substance that all grounds of defense must be specifically pleaded, and that every allegation in any pleading, if not denied specifically or by necessary implication, is taken to be admitted. The defendant in its affidavit of merits in the present case did not deny the allegation contained in plaintiff's statement of claim as to the invoice prices of the goods and as to defendant's acceptance of the goods, nor did it allege as a defense that the goods were not as warranted or in accordance with sample or description. In *Clinton Co. v. Stiles,* 197 Ill. App. 505, 507, it is held that, if a defendant has not in his affidavit of merits in the municipal court pleaded that the goods purchased were not satisfactory or according to contract, he cannot, in the trial of a suit for the purchase price, avail himself of these defenses. (See also *Smith v. Lord & Bushnell Co.,* 199 Ill. App. 582, 585.)

Counsel for defendant further contend that, if the goods were the property of plaintiff in November, 1923, when defendant received them and applied them to it own use, plaintiff has misconceived its remedy and that it should have sued defendant for damages for the *conversion* of the goods, and that in such a suit evidence as to their condition and value would have been proper. Under the pleadings and the facts we do not think this conversion theory to be tenable. Plaintiff originally owned the goods and sold and delivered them to defendant. The latter at first rejected them and returned them to the carrier to be delivered back

to plaintiff, but plaintiff refused to accept their return and thereafter always desired defendant to receive them and pay the purchase price. Defendant finally accepted them from the same carrier but refused to pay anything for them. To constitute a conversion of chattels there must be an *unauthorized* assumption of the right to the possession or ownership thereof. The act of defendant in finally accepting the goods in question was invited by plaintiff.

Our conclusion is that the judgment appealed from should be affirmed, and it is so ordered.

*Affirmed.*

BARNES, P. J., and WELLS, J., concur.